UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | |
|---|---|
| CRYSTAL LUCILLE PERON,<br><br>　　Petitioner,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security<br><br>　　Respondent. | Case No.: 1:12-cv-00035<br><br>**MEMORANDUM DECISION AND ORDER** |

　　Now pending before the Court is Crystal Lucille Peron's Complaint and Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny her claim for Disability Insurance Benefits.  The action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

　　On February 28, 2007, Crystal Lucille Peron ("Petitioner") applied for supplemental security income, alleging a disability onset date of November 18, 2004.  Petitioner's claim was initially denied on July 5, 2007 and, again, on reconsideration on February 21, 2008.  On April 21, 2008, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ").  On July 6, 2009, ALJ Michael D. Radensky held a hearing in San Bernadino, California, at which time Petitioner, representing herself, appeared and testified.  An impartial vocational expert, Troy Scott, also appeared and testified.

**MEMORANDUM DECISION AND ORDER - 1**

On August 13, 2009, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act. Petitioner timely requested review from the Appeals Council on October 10, 2009. On January 21, 2010, the Appeals Council denied Petitioner's request for review. After receiving additional information, the Appeals Council set aside its January 21, 2010 decision and, on November 23, 2011, again denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing that "[t]he decision denying the Petitioner's claim is not in accordance with the law and is not supported by substantial evidence." *See* Compl. and Pet. for Review, p. 2 (Docket No. 1). Specifically, Petitioner asserts that (1) the ALJ failed to consider an April 17, 2007 California Department of Social Services ("CDSS") report allegedly finding that Petition was unable to work; (2) the ALJ failed to consider or give proper weight to the medical opinion of her treating physician, Dr. Mueller; and (3) the ALJ failed to properly consider the statements of Petitioner's previous employer, Jason Bruce. *See* Brief in Supp. of Pet. for Review, p. 2 (Docket No. 18). Petitioner therefore requests that the Court reverse the ALJ's decision and order the immediate payment of benefits or, alternatively, remand the case for further proceedings. *See* Pet. for Review, pp. 2-3 (Docket No. 1).

## II. STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).

**MEMORANDUM DECISION AND ORDER - 2**

Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

**MEMORANDUM DECISION AND ORDER - 3**

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

### III.  DISCUSSION

**A.     Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I). SGA is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. §§ 404.1572(a), 416.972(a). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized. 20 C.F.R. §§ 404.1572(b), 416.972(b). If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience. 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not engaged in SGA, the analysis proceeds to the second step. Here, the ALJ

found that Petitioner has not engaged in substantial gainful activity since February 28, 2007, the alleged onset date (AR 81).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement. 20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921. If the claimant does not have a severe medically determinable impairment or combination of impairments, disability benefits are denied. 20 C.F.R. §§ 404.1520(c), 416.920(c). Here, the ALJ found that Petitioner had the following severe impairments: (1) hepatitis C, (2) chronic fatigue, and (3) fibrosis. (AR 81-82).

The third step requires the ALJ to determine the medical severity of any impairments; that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the answer is yes, the claimant is considered disabled under the Social Security Act and benefits are awarded. 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant's impairments neither meet nor equal one of the listed impairments, the claimant's case cannot be resolved at step three and the evaluation proceeds to step four. *Id.* Here, the ALJ concluded that Petitioner's above-listed impairments, while severe, do not meet or medically equal, either singly or in combination, the criteria established for any of the qualifying impairments. (AR 82).

**MEMORANDUM DECISION AND ORDER - 5**

The fourth step of the evaluation process requires the ALJ to determine whether the claimant's residual functional capacity is sufficient for the claimant to perform past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). An individual's residual functional capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform medium work involving lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. (AR 82-86).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is capable of performing past relevant work as a data entry clerk, a cashier, an eligibility specialist, and/or a paralegal because, according to the ALJ, such work does not require the performance of work-related activities precluded by Petitioner's residual functional capacity. (AR 86).

**MEMORANDUM DECISION AND ORDER - 6**

**B.    Analysis**

    1.    <u>The April 17, 2007 CDSS Report</u>

Petitioner contends that the ALJ violated Social Security Ruling ("SSR") 06-03p by failing to address an April 17, 2007 CDSS Report considering whether Petitioner was required to participate in California's "Welfare to Work Program" from October 2006 through January 2007.  *See* Brief in Supp. of Pet. for Review, p. 4 (Docket No. 18) (referencing AR (127-134)).  Respondent does not dispute that the ALJ did not consider the report, arguing instead that it "was not relevant to Petitioner's case."  *See* Resp.'s Brief, p. 6 (Docket No. 25).

Significantly, the at-issue report references a "Medical Report signed by [Petitioner's] doctor which indicates the [Petitioner] has a medical condition which prevents her from working."  (AR 130).[1]  Such information apparently prompted the CDSS to ultimately determine that Petitioner had a "medical condition" that prevented her from participating in the Welfare to Work Program; in turn, the CDSS rescinded sanctions imposed on Petitioner between October 2006 and January 2007.  (AR 132-134).  According to Respondent, these findings are immaterial when understanding that a decision by another governmental agency regarding disability is not binding on the Commissioner because disability is determined by social security law – in essence, an "apples and oranges" argument.  *See* Resp.'s Brief, p. 7 (Docket No. 25) ("CDSS's determination is of limited probative value because the legal standards applied to determine disability under the Welfare to Work program are different than those in the Social Security Act.").  Respondent's position in this respect, while logical, misses the point.

---

    [1] Oddly, the report also references that the "onset of the condition" was November 27, 2006 whereas Petitioner herself claims a disability onset date of November 18, 2004.  *Compare* (AR 130) *with* (AR 161).

**MEMORANDUM DECISION AND ORDER - 7**

In incorporating 20 C.F.R. sections 404.1504 and 416.904, the above-referenced SSR 06-03p specifically contemplates Respondent's argument, stating:

> [a] decision by any nongovernmental agency or any governmental agency about whether you are disabled or blind is based on its rules *and is not our decision about whether you are disabled or blind. We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency . . . that you are disabled or blind is not binding on us*.

SSR 06-03p, *7 (quoting 20 C.F.R. §§ 404.1504, 416.904) (emphasis added). Still, SSR 06-03p goes on to state in no uncertain terms that:

> However, we are required to evaluate all the evidence in the case record that may have a bearing on our determination or decision of disability, *including decisions by other governmental and nongovernmental agencies . . . . Therefore, evidence of a disability decision by another governmental or nongovernmental agency cannot be ignored and must be considered.* . . . . [T]he adjudicator should explain the consideration given to these decisions in the notice of decision for hearing cases and in the case record for initial and reconsideration cases.

*Id*. (internal citations omitted) (emphasis added). In other words, the fact that the CDSS's disability determination protocol may differ from the Social Security Act's own process (and there are differences that Respondent accurately points out (*see* Resp.'s Brief, pp. 7-8 (Docket No. 25)) supplies no justification for an ALJ to completely ignore a CDSS report suggesting that Petitioner is indeed disabled. While legitimate reasons may exist for departing from the CDSS report, the ALJ does not offer any because, alas, he never actually considered (or even acknowledged) the report to begin with. In not doing so, the ALJ erred.

Still, such error is harmless for at least two reasons. *See Stout v. Commissioner, Social Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006) (applying harmless error analysis when ALJ's error "was inconsequential to the ultimate nondisability determination"). First, as Respondent notes, the thrust of the CDSS report speaks to a finite, four-month period of time (October 2006

**MEMORANDUM DECISION AND ORDER - 8**

through January 2007) where Petitioner was allegedly "disabled" and, therefore, exempt from the Welfare to Work Program. Not only does this period precede Petitioner's February 28, 2007 application for Disability Insurance Benefits, it represents only a third of the necessary 12 months needed to establish disability under the Social Security Act. *See* 42 U.S.C. § 1382c(a)(3)(A) ("[A]n individual shall be considered to be disabled . . . if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."). That is, a four-month snapshot of Petitioner's condition, regardless of the report's genesis, is, at most, of superficial use when examined against the actual disability requirements involved here. Second, as a practical matter, the CDSS report turns on Doctor Mueller's Medical Report, used to finally cure Petitioner's previously-imposed Welfare to Work sanction – said another way, consideration of the CDSS report's disability conclusion necessarily involves an examination of Dr. Mueller's opinions. There is no denying that the ALJ discussed Dr. Mueller's opinions; indeed, Petitioner herself now objects to the ALJ's handling in just such a respect (*see infra*). So, while the ALJ gave short shrift to the CDSS report, he nonetheless addressed the underlying impetus for the conclusions stated in that report, thus bringing the substance of the report into his decision.

With all this in mind, it cannot be said that the ALJ's admitted failure to consider the CDSS's April 17, 2007 report warrants a reversal of the ALJ's finding that Petitioner is not disabled.

    2.    <u>Dr. Mueller's Opinions</u>

Opinions of examining physicians, like Dr. Mueller, are entitled to greater weight than the opinion of a non-examining physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir.

**MEMORANDUM DECISION AND ORDER - 9**

1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *See Pitzer*, 908 F.2d at 506. Even if the opinion of an examining doctor is contradicted by another doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

In deciding that Dr. Mueller's opinions are not persuasive upon the question of Petitioner's proper residual functional capacity, the ALJ concluded that Dr. Mueller's assessment is not supported by any objective findings, actually conflicting with both his own treatment notes, as well as other doctors' opinions. (AR 82-86). Petitioner naturally takes issue with the ALJ's conclusion, arguing that the ALJ erred in "not giv[ing] proper weight" to Dr. Mueller's opinions.

While it is true that Dr. Mueller was Petitioner's treating physician, Petitioner does not immediately identify the extent to which the ALJ's residual functional capacity assessment improperly deviates from Dr. Mueller's findings – initially referencing Petitioner's Hepatitis C diagnosis and her related treatment. But there is no dispute that Petitioner suffers from certain physical impairments related to Hepatitis C, as well as chronic fatigue and fibrosis; both Dr. Mueller and the ALJ agree on this discrete point. *See supra*. The disagreement, however, presents itself when discussing Petitioner's corresponding physical limitations. Dr. Mueller appears to opine that Petitioner cannot work; however, as reflected in his decision, the ALJ thinks otherwise.

**MEMORANDUM DECISION AND ORDER - 10**

Petitioner relies upon Dr. Mueller's (1) December 26, 2006 "Physical Residual Functional Capacity Assessment" (AR 659-665), (2) January 17, 2007 "Authorization to Release Medical Information" (AR 353-354), and (2) May 8, 2008 "Authorization to Release Medical Information" (AR 351-352) as the basis for challenging the ALJ's residual functional capacity assessment. *See* Brief in Supp. of Pet. for Review, pp. 4-5 (Docket No. 18).[2] Within the December 26, 2006 Physical Residual Functional Capacity Assessment, Dr. Mueller opined that, as a result of her physical impairments, Petitioner (1) could occasionally lift 20 pounds; (2) could frequently lift less than 10 pounds; (3) could stand and walk for two hours in a normal workday; (4) could sit for a total of less than six hours in an 8-hour workday, periodically alternating between sitting and standing; (5) had limited use of her lower extremities; (6) could only occasionally climb ramps, stairs, ladders, ropes, or scaffolds; and (7) could frequently bend stoop kneel crouch, and crawl. (AR 660-661). However, given Petitioner's overall treatment history with Dr. Mueller, coupled with the opinions of Dr. To and other evidence in the record (including Petitioner's own self-assessment), the ALJ was not persuaded by the content of Dr. Mueller's December 26, 2006 Physical Residual Functional Capacity Assessment. (AR 83-86). Most notably, the ALJ pointed out the following evidence in the record:

- Despite alleging severe limitations of lifting, bending, standing, and walking, Petitioner moved from California to Idaho after her alleged onset date and, in that move, participated in packing and moving herself. (AR 83) (citing

---

[2] Although Petitioner argues in her briefing that the January 17, 2007 and May 8, 2008 "Authorization[s] to Release Medical Information" "are not discussed in the Unfavorable Decision" (*see* Brief in Supp. of Pet. for Review, p. 5 (Docket No. 18)), Petitioner does not dispute Respondent's response that such materials were submitted *after* the ALJ's August 13, 2009 decision and considered by the Appeals Council in denying review. *See* Resp.'s Brief, p. 7 (Docket No. 25).

**MEMORANDUM DECISION AND ORDER - 11**

> AR 202 & 681). Similarly, despite allegations of debilitating fatigue and pain, Petitioner admits that she can drive, go out alone, bathe, do her own hair, and manage her own funds. (AR 83) (citing AR 198 & 200).

- According to limited treatment notes, Petitioner complained of low back pain since the age of 13 – well before the alleged November 18, 2004 onset date. (AR 84) (citing AR 548 & 666). However, there is no indication in the record that such pain was ongoing, the next mention of low back pain (following a November 1, 2004 car accident) being December 26, 2006 (AR 84) (citing AR 660). Further still, the medical evidence of record fails to establish a history of *treatment* for low back pain from November 18, 2004 through June 11, 2009. (AR 84) (citing AR 672).

- Despite allegations of overall fatigue and weakness (saying nothing of the above-referenced limitations), in June 2009, Jeremy Mitchell, D.O. actually "encouraged [Petitioner's] *continued* exercise." (AR 85) (citing AR 691) (emphasis added).

- Consultating examiner, Dr. To, examined Petitioner on June 13, 2007 and found that she is capable of (1) pushing, pulling, lifting, and carrying 50 pounds occasionally and 25 pounds frequently; (2) standing and walking six hours in an 8-hour workday; (3) sitting without restrictions; (4) walking on uneven terrain, climbing ladders, or working with heights on a frequent basis; (5) fine and gross hand manipulative movements without restrictions; (6) bending kneeling, stooping, crawling, and crouching on a frequent basis; and (7) moving without assistive ambulatory devices. (AR 85) (citing 500-504).[3]

- A June 20, 2007 "Physical Residual Functional Capacity Assessment" from Dr. M.H. Yee, as well as a February 20, 2008 "Case Analysis" from Dr. Joel Ross affirmed Dr. To's June 13, 2007 findings. (AR 85) (citing AR 507-514 & 645-647).

- Dr. Mueller's December 26, 2006 limitations opinions are not supported by any clinical findings to support his assessment – they are not supported by

---

[3] Petitioner argues that Dr. To "did not review or see any other medical records when he performed his examination," rhetorically asking "[h]ow is it possible for Dr. To to provide any meaningful assessment of a person with liver disease in a one-hour exam without referring to other medical records or other diagnostic tests?" *See* Brief in Supp. of Pet. for Review, p. 6 (Docket No. 18). However, there is no medical evidence in the record for Dr. To to consider (Petitioner supplies none) indicating that she is unable to work *because of* her Hepatitis C or fibrosis.

**MEMORANDUM DECISION AND ORDER - 12**

> his own treatment records and they are not supported anywhere else in the medical record. (AR 86) ("The sedentary limitations are not credible, especially considering the gaps in treatment, and the very conservative, minimal and non-emergency treatment received. There is no other medical source opinion that supports such limited restrictions. Dr. Mueller's assessment is vague and conclusory.").

Petitioner does not address these portions of the ALJ's decision (raised by Respondent within its opposition to Petitioner's arguments vis à vis Dr. Mueller) in her Reply.

As to Dr. Mueller's two subsequent "Authorization[s] to Release Medical Information," they represent a single page, fill-in-the-box, form concluding in relevant part that Petitioner (1) has a chronic, medically verifiable condition that limits/prevents her from performing certain tasks; (2) is unable to work; and (3) has limitations that affect her ability to participate in education or training. (AR 351-354). Nothing more. There is neither an identification of the actual medical condition apparently involved, nor a discussion pertaining to the extent of Petitioner's referenced limitations. *See id*. While such information may be helpful to the California Health and Human Services Agency (the entity responsible for the form itself) for its own purposes, its persuasiveness is very limited. Not only are the findings therein unexplained, like Dr. Mueller's December 26, 2006 Physical Residual Functional Capacity Assessment, they are not supported by the balance of the record. *See Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996) ("The ALJ, however, permissibly rejected [the three psychological evaluations] because they were check-off reports that did not contain any explanation of the bases of their conclusions."); *see also Young v. Heckler*, 803 F.2d 963, 968 (9th Cir. 1986) (finding that ALJ may reject physician's opinion which is "brief and conclusory in form with little in the way of clinical findings to support [its] conclusion."). Even though the ALJ may not have had the latter

**MEMORANDUM DECISION AND ORDER - 13**

two "reports" from Dr. Mueller, the record indicates that the Appeals Council still considered such information in upholding the ALJ's decision. (AR 72-75 & 61-67).

Simply put, there is no question that Petitioner suffers from several severe impairments (acknowledged by the ALJ (*see supra*)) that no doubt impact her ability to work; however, it is incorrect to state that the ALJ "failed to consider or give proper weight to the medical opinion of her treating physician, Dr. Mueller." *See* Brief in Supp. of Pet. for Review, p. 2 (Docket No. 18). While Dr. Mueller's assessments may not have been given the weight Petitioner would have preferred, they were not given independent of the surrounding medical record or the applicable standards of law. At this stage of the proceedings it is not this Court's duty to resolve the conflicting opinions and ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the Social Security regulations. Rather, this Court is tasked with determining whether the ALJ's decision that Petitioner is not disabled is supported by the record. Given the conflicting medical opinions, the ALJ need only offer specific and legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Mueller's medical opinion. *See supra*. Because the evidence can reasonably support the ALJ's conclusion in this respect, this Court will not substitute its judgment for that of the ALJ's. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

    3.    <u>Jason Bruce's Opinions</u>

In a July 8, 2008 "Statement of Claimant or Other Person," Jason Bruce, Petitioner's last work supervisor, stated that Petitioner had been employed by the High Desert Travel Center for six months and that, during that time, she was (1) frequently late for, or absent from, her scheduled shifts, (2) inattentive, (3) misplacing credit cards, (4) losing transaction records, (5)

**MEMORANDUM DECISION AND ORDER - 14**

unable to remember things, and (6) generally unable to deal with stressful situations. (AR 302). Petitioner was ultimately terminated for falling asleep behind the cash register while she was the only employee on duty. (AR 303). The ALJ gave no weight to Mr. Bruce's statements, reasoning that (1) they were not made under oath or penalty of perjury, and (2) he observed her for only six months and, therefore, could not credibly address the duration of Petitioner's functional limitations. (AR 83-84). Petitioner argues that the ALJ erred by failing to properly consider such testimony. *See* Brief in Supp. of Pet. for review, p. 7 (Docket No. 18).

Respondent concedes that, in fact, "the record shows that Mr. Bruce's statement was made under penalty of perjury." *See* Resp.'s Brief, p. 15 (Docket No. 25). The ALJ was thus mistaken in this regard. (AR 303). However, the ALJ's alternate basis for rejecting Mr. Bruce's statements – his limited interaction with Petitioner – is consistent with Ninth Circuit precedent on the issue. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) ("An ALJ need only given germane reasons for discrediting the testimony of lay witnesses."). Here, Mr. Bruce (who is not a medical expert) witnessed Petitioner for only a limited period of time during a 6-month period. Because a Social Security disability determination requires a much longer period of impairment (even assuming Mr. Bruce's statements are true) (*see supra*), his comments can appropriately be discounted by the ALJ – particularly when considering the balance of the remaining evidence in the record. *See supra*.[4] Therefore, there is no basis to claim that the ALJ

---

[4] It should also be mentioned that Mr. Bruce's statements spoke to a period of time in 2004. Although Petitioner herself apparently claims an onset date of November 18, 2004 (AR 161), Petitioner's treating physician, Dr. Mueller, indicated an onset date of November 27, 2006 (AR 352 & 354) – approximately two years *after* the incidents referenced within Mr. Bruce's statements.

**MEMORANDUM DECISION AND ORDER - 15**

improperly disregarded Mr. Bruce's testimony. *See, e.g.*, Brief in Supp. of Pet. for review, p. 7 (Docket No. 18) ("The Commissioner clearly has the authority and discretion to discredit such evidence in the decision, or to assign little to no weight to the evidence."). While ultimately not favorable to Petitioner, the ALJ's rejection of Mr. Bruce's testimony was not made independent of the record and/or without germane reasons. Under these circumstances, because the evidence can reasonably support the ALJ's conclusion, this Court will not interfere with the ALJ's findings. *See Richardson*, 402 U.S. at 401; *Matney*, 981 F.2d at 1019.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its own interpretation for that of the ALJ. *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence may be susceptible to a different interpretation. Accordingly, the ALJ's decisions concerning the CDSS report, Dr. Mueller's opinions, and Mr. Bruce's statements are based on proper legal standards and supported by substantial evidence. Therefore, I conclude that the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

## V. **ORDER**

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.



DATED: **September 3, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 17**